UNTED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18CV905 RLW ) |
| RELIANT CARE MANAGEMENT COMPANY, LLC, *et al.*, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand (ECF No. 14). The motion is fully briefed and ready for disposition. Upon consideration of the motion and related memoranda, the Court will grant Plaintiff's motion and remand the case to Circuit Court of St. Louis County, Missouri.

## I. Background

On April 20, 2018, Plaintiff filed a Petition for Damages in the Circuit Court of St. Louis County, Missouri. (ECF No. 7) Defendant Reliant Care Management, LLC ("Reliant Care") removed the action to federal court on June 8, 2018 based on federal question jurisdiction. (ECF No. 1) Plaintiff contends that he entered into an employment agreement ("Agreement") with Reliant Care on April 13, 2015 for a period of 10 years. (Pet. ¶ 4, ECF No. 7) The terms of the Agreement provided a base salary, monthly bonuses, and benefits, as well as provisions governing the termination of employment "with cause" or "without cause." (*Id.* at ¶¶ 4-7) According to Plaintiff, in May of 2017, Reliant Care's owner and COO instructed Plaintiff to ensure that one of Reliant Care's facilities was in compliance with state regulations. (*Id.* at ¶ 9) Plaintiff issued several directives to the facility, but on May 26, 2017, Reliant Care suspended

Plaintiff's employment, claiming that Plaintiff's conduct at the facility was unprofessional. (*Id.* at ¶¶ 9-10) On June 15, 2017, Reliant Care terminated Plaintiff's employment for cause, effective immediately. (*Id.* at ¶ 11) However, Plaintiff claims that Reliant Care did not have grounds to fire Plaintiff for cause and that the proffered reasons of unprofessional conduct and unauthorized company credit card purchases were contrived and without any factual or legal basis. (*Id.* at ¶¶ 12-16)

In Count I of the Petition, Plaintiff alleges breach of contract (Count I) for terminating Plaintiff without cause and failing to pay money and benefits owed under the Agreement. (*Id.* at ¶¶ 17-27) Plaintiff further claims wrongful discharge in violation of public policy (Count II) for terminating Plaintiff's employment after he informed Reliant Care of possible illegal behavior with respect to Medicare services and billing and paying company bills with facility residents' personal funds. (*Id.* at ¶¶ 28-46) Finally, in Count III, Plaintiff avers that Reliant Care retaliated against him in violation of the Missouri Human Rights Act ("MHRA") by terminating Plaintiff's employment after he reported a nurse's allegations of sexual harassment by a regional director of Reliant Care. (*Id.* at ¶¶ 47-69)

In its Notice of Removal, Defendant Reliant Care asserts that ERISA completely preempts Count I because the breach of contract claim relates to employee benefit plans. In addition, Reliant Care contends that removal for federal question jurisdiction is also appropriate in Count II because Plaintiff is alleging a claim under the False Claims Act, 31 U.S.C. § 3729, with respect to his complaint about alleged Medicare fraud. In response, Plaintiff has filed a motion to remand, asserting that ERISA does not preempt Count I, and he does not raise a federal claim in Count II.

## Legal Standard

A party may remove an action to federal court only if it could have been brought in federal court originally. *Junk v. Terminix Int'l Co*, 628 F.3d 439, 444 (8th Cir. 2010) (citing 28 U.S.C. § 1441(a)-(b)). In removal cases, the Court reviews the state court petition and the notice of removal in order to determine whether it has jurisdiction. *Branch v. Wheaton Van Lines, Inc.*, No. 4:14-CV-01735, 2014 WL 6461372, at *1 (E.D. Mo. Nov. 17, 2014). "Where the defendant seeks to invoke federal jurisdiction through removal, . . . , it bears the burden of proving that the jurisdictional threshold is satisfied." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009) (citation omitted). "[A] case is ordinarily not removable on federal question grounds unless the federal question is presented on the face of the plaintiff's complaint." *Kaufman v. Boone Ctr., Inc.*, No. 4:11CV286 CDP, 2011 WL 1564052, at *1 (E.D. Mo. Apr. 25, 2011). A plaintiff may move to remand the case if the district court lacks subject matter jurisdiction. *Junk*, 628 F.3d at 444 (citing 28 U.S.C. § 1447(c)). District courts are to resolve all doubts regarding federal jurisdiction in favor of remand. *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015) (citation omitted).

"'The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Al-Mumin v. Loraine*, No. 4:17 CV 1226 CDP, 2017 WL 4617075, at *1 (E.D. Mo. Oct. 16, 2017) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotations omitted)). This rule makes plaintiff the master of his or her claim such that the plaintiff may avoid federal jurisdiction by relying on state law exclusively. *Caterpillar*, 482 U.S. at 392. Furthermore, "[d]efendants are 'not permitted to inject a federal question into an otherwise state law claim and

3

thereby transform the action into one arising under federal law.'" *Cent. Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (quoting *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000)).

However, a corollary to the well-pleaded complaint rule is the "complete pre-emption" doctrine. *Caterpillar*, 482 U.S. at 393. Under this doctrine, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

## Discussion

In the Motion for Remand, Plaintiff asserts that Count I of his Petition is not preempted by ERISA because Plaintiff's breach of contract claim does not relate to any employee benefit plan or fall within the scope of ERISA. With respect to Count II, Plaintiff contends that Plaintiff's wrongful discharge claim does not present a federal question merely because it references federal statute. The Court finds that Defendant has failed to meet its burden of demonstrating that the Court has federal jurisdiction in this matter.

### A. ERISA

"Claims arising under the civil enforcement provision of Section 502(a) of ERISA, 29 U.S.C. § 1132(a), including a claim to recover benefits or enforce rights under the terms of an ERISA plan," are completely preempted. *Neumann v. AT & T Commc'ns*, 376 F.3d 773, 779 (8th Cir. 2004). ERISA defines an employee benefit plan as an "employee welfare benefit plan," providing participants and their beneficiaries, *inter alia*, medical, disability, or vacation benefits,

4

and "employee pension benefit plans," providing retirement income. 29 U.S.C. § 1002. "Congress intended that an action brought to recover benefits or enforce rights that were allegedly denied contrary to the terms of an ERISA benefit plan will be regarded as arising under the laws of the United States, even if the complaint filed by the plan beneficiary purports to raise only a state-law cause of action." *Id.* (citing *Metro. Life*, 481 U.S. at 66-67). "As a result, where a claim 'relate[s] to an employee benefit plan,' and seeks to recover benefits due or to enforce rights under the terms of the plan, that claim is preempted by federal law and the exclusive cause of action is under federal law." *Rittinger v. Healthy All. Ins. Co.*, No. 4:15-CV-1548 CAS, 2015 WL 9269286, at *2 (E.D. Mo. Dec. 21, 2015) (quoting *Neumann*, 376 F.3d at 779-80).

In his state court Petition, Plaintiff seeks severance wages and benefits pursuant to the employment Agreement. "An arrangement to provide benefits to employees does not invoke ERISA's protections solely because it delivers benefits; not all policies, or disbursement schemes, providing severance payment benefits are ERISA plans." *Eide v. Grey Fox Tech. Servs. Corp.*, 329 F.3d 600, 605 (8th Cir. 2003) (citations omitted). "Severance benefits are characterized as a plan when they 'require[ ] an ongoing administrative program to meet the employer's obligation.'" *Crews v. Gen. Am. Life Ins. Co.*, 274 F.3d 502, 506 (8th Cir. 2001) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)). An ongoing administrative scheme is not required where severance payments may be calculated by "'simple or mechanical determinations'" such as the "'requirement of a one-time, lump-sum payment triggered by a single event [that] requires no administrative scheme whatsoever to meet the employer's obligation.'" *Id.* (quoting *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 257 (8th Cir. 1994) and *Fort Halifax*, 482 U.S. at 12). Such one-time, lump-sum payment is inconsistent with

5

ERISA plans because the distribution of benefits does not constitute an ongoing demand on employer assets. *Id.* However, "[a] plan may be an ERISA plan if the employer 'assumes . . . responsibility to pay benefits on a regular basis, and thus faces . . . periodic demands on its assets that create a need for financial coordination and control.'" *Cassidy v. Akzo Nobel Salt, Inc.,* 308 F.3d 613, 616 (6th Cir. 2002) (quoting *Fort Halifax,* 482 U.S. at 12). Accordingly, a severance pay plan that includes continuation of medical benefits is an ERISA plan, but a one-time lump sum distribution of severance benefits does not meet the definition of an ERISA welfare benefit plan. *Id.*

Further, the Eighth Circuit Court of Appeals has held:

Congress has never preempted state laws that regulate and enforce individual employment contracts between employers and their executives. That remains an important prerogative of the States, no matter how complex a contract may be to administer. Neither the administrative nor the remedial purposes of ERISA preemption apply to the resolution of contractual disputes between an employer and a single, salaried employee. Considering ERISA's statutory language, purpose, and historical context, we conclude that an individual contract providing severance benefits to a single executive employee is not an ERISA employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).

*Dakota, Minnesota & E. R.R. Corp. v. Schieffer,* 648 F.3d 935, 938 (8th Cir. 2011). Where a plaintiff's contract alone is at issue, "*Schieffer* would create sufficient 'doubts about federal jurisdiction' to justify remand. *Miller v. Starkey Labs., Inc.,* 299 F. Supp. 3d 1046, 1052 (D. Minn. 2018) (quoting *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 620 (8th Cir. 2010)).

Here, the Court finds that ERISA does not preempt Plaintiff's breach of contract claim. First, the provisions cited by Reliant Care in support of its proposition that the severance plan involves an ongoing administrative scheme fail to demonstrate that the benefits "included such things as the continuation of medical and dental benefits which were to be paid out over time." *Petersen v. E.F. Johnson Co.,* 366 F.3d 676, 679 (8th Cir. 2004). Instead, if terminated without

6

cause, Defendant would provide written notice at least 60 days prior to the termination date; Plaintiff would be entitled to compensation accrued through the effective date of the termination; Plaintiff would be entitled to an amount equal to the compensation Plaintiff received in his last full year of employment prior to the effective date of termination and to be paid for a period of 24 months; and Plaintiff would be entitled to any other benefits accrued and owing. (ECF No. 15-1 ¶ 8(a)(iv)) The Agreement further provided that severance benefits were only paid on the condition that Plaintiff deliver a resignation from all employee benefit plans and allowed no accrual of benefits during the severance period. (ECF No. 15-1 ¶ 8(e)(1) & (3)). Additionally, in the event Plaintiff obtained other employment within 24 months of termination, Defendant would offset the severance benefit payments by Plaintiff's current employment compensation. (ECF No. 15-1 ¶ 8(e)(2)). The only reference to continued participation in medical, vision, dental, life insurance, and disability plans pertained to termination for cause, which Plaintiff disputes is applicable to his case. The aforementioned provisions demonstrate that the severance payments would be easily calculated by simple or mechanical determinations not an ongoing administrative scheme. *See Kulinski*, 21 F.3d at 257 ("Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme.").

In addition, review of the contract at issue demonstrates that the contract was a single contract unique to Plaintiff as an executive vice president, not a standard contract for employees. (ECF No. 15-1 ¶¶ 1-6) Although Reliant Care presents a declaration regarding the similarities between another executive's contract and Plaintiff's contract, Reliant Care has failed to show that the individual contract providing for severance benefits with respect to Plaintiff is an ERISA employee welfare benefit plan.

7

Further, Defendant has failed to demonstrate that Plaintiff's Petition alleges an ERISA interference claim under § 510. "Section 510 of ERISA prohibits, among other things, an employer from discharging or discriminating against a participant in an ERISA plan "'for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.'" *Barnhardt v. Open Harvest Co-op.*, 742 F.3d 365, 369 (8th Cir. 2014) (quoting 29 U.S.C. § 1140). To establish a prima facie case of ERISA interference, a plaintiff must show (1) that the employer subjected him to an adverse employment action; (2) that the plaintiff was likely to receive future benefits; and (3) a causal connection between the adverse action and the likelihood of future benefits. *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1043-44 (8th Cir. 2010) (citation omitted). "In order to recover under a § 510 interference claim, a plaintiff 'must prove that [the defendant] possessed a specific intent to interfere with her ERISA benefits.'" *Barnhart*, 742 F.3d at 369 (quoting *Manning*, 604 F.3d at 1044 (8th Cir. 2010) (internal quotation omitted)). "This specific intent to interfere means that the plaintiff's entitlement to ERISA benefits had 'a determinative influence' on the defendant's decision." *Id.* (quoting *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 777 (8th Cir. 2004)).

Nowhere in Plaintiff's Petition does he state that his employment was terminated for the purpose of interfering with the attainment of a right under an ERISA employee benefit plan. Instead, Plaintiff contends that Reliant Care claimed Plaintiff was unprofessional as a pretext for his termination to avoid paying monies and benefits owed under the Agreement. (Pet. ¶¶ 26-27) Reliant Care provides no case law in support of its proposition that Plaintiff's allegations regarding pretext for his termination converts to a claim that Reliant Care possessed a specific intent to interfere with Plaintiff's entitlement to ERISA benefits. *See, e.g., Avenevoli v. Lockton Companies, Inc.*, No. 4:07CV1867HEA, 2008 WL 509545, at *3 (E.D. Mo. Feb. 22, 2008)

8

(finding Plaintiff's claim of wrongful discharge based on disability was not preempted by ERISA where the petition did not allege that payment of plaintiff's medical expenses was a motivating factor in the decision to discharge plaintiff and where the petition only referred to "lost benefits" and not to an ERISA plan). As stated above, Defendant has not met its burden of showing that Plaintiff's Petition is based on an ERISA plan and therefore Count I is not preempted by ERISA. Thus, Count I does not raise a federal question and is not subject to federal jurisdiction.

## B. False Claims Act

With respect to the False Claims Act ("FCA"), Defendant Reliant Care argues that Plaintiff's reference to the FCA in Count II pertaining to wrongful discharge for reporting Medicare violations is actually a retaliation claim under the FCA and not a public policy claim. The Court disagrees.

Under Missouri law, a plaintiff may bring a claim for wrongful discharge in violation of public policy. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. 2010). In *Fleshner*, the Supreme Court of Missouri recognized a public policy exception to the general rule that at-will employees may be terminated for any reason or no reason. *Id.* The *Fleshner* court adopted and set forth the following exception to the at-will employment doctrine: "An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to the statue, or rule created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Id.* "If an employer terminates an employee for either reason, then the employee has a cause of action in tort for wrongful discharge based on the public-policy exception." *Id.* To state a claim for wrongful discharge in violation of public policy, "a plaintiff must establish that: (1) she refused to violate a law or a well-established and

9

clear mandate of public policy, or reported such a violation to a superior or public authority; (2) the defendant terminated her employment; (3) her refusal or report was a contributing factor in her termination; and (4) as a result of her discharge, she sustained damage." *Roller v. Glazer's Distributors of Missouri*, No. 4:16CV0022 CDP, 2016 WL 2609804, at *2 (E.D. Mo. May 6, 2016) (citing *Keveney v. Mo. Military Acad.*, 314 S.W.3d 98, 103 (Mo. 2010)).

Here, Plaintiff claims in Count II of the Petition that Reliant Care wrongfully discharged him in violation of public policy. Specifically, Plaintiff claims that he became aware and informed Reliant Care of behavior that Plaintiff reasonably believed to be illegal and that he refused to engage in such illegal behavior. (Pet. ¶¶ 31-35) In support of this allegation, Plaintiff cites to a provision of the FCA, 31 U.S.C. § 3729 pertaining to false Medicare claims against the government, and to provisions from the Code of Federal Regulations, 42 C.F.R. § 483.10 related to requirements for long term care facilities. (*Id.* at ¶¶ 36, 38) Plaintiff contends that these provisions constitute a clear mandate of public policy, and that his reporting of and refusal to engage in the illegal activity was a contributing factor in Plaintiff's termination of employment. (*Id.* at ¶¶41-43)

The Court finds that merely citing a federal statue or regulation in support of a good faith belief that Defendant's activity was unlawful does not present a federal question. District courts in this circuit have found that a claim for wrongful discharge in violation of public policy under Missouri law is a separate action from a civil claim under the FCA. *See, e.g. Gierer v. Rehab Med., Inc.*, No. 4:14-CV-1382 CAS, 2015 WL 9269252, at *4 (E.D. Mo. Dec. 21, 2015) (finding the existence of a civil remedy under the FCA did not preclude a plaintiff from simultaneously raising a public policy tort action for wrongful termination); *U.S. ex rel. Miller v. Weston Educ., Inc.*, No. 4:11-CV-00112-NKL, 2012 WL 6190307, at *14 (W.D. Mo. Dec. 12, 2012) (finding §

10

3730 of the FCA did not preempt common law wrongful termination claims where those claims alleged retaliatory actions taken in response to reports about and refusal to participate in noncompliance with state and federal laws and regulations). Likewise, in *Roller*, the district court found that plaintiff's state law cause of action for wrongful discharge in violation of public policy under Missouri law was not subject to federal question jurisdiction even though plaintiff had complained to her employer about possible FLSA violations. *Roller*, 2016 WL 2609804, at \*3-4. The *Roller* court reasoned that plaintiff's FLSA claims involved the action of private defendants and not a federal agency, thus requiring a fact-specific inquiry into the defendants' conduct and not a resolution of a federal question. *Id.* at \*4. Thus, the court concluded that "defendants have not presented a federal question that is 'actually disputed' and 'substantial.'" *Id.* The court further noted "that the State of Missouri has a significant interest in addressing the primary questions presented in this case, including whether Roller appropriately 'blew the whistle' by informing her superior of the alleged unlawful conduct, and whether an objectively reasonable good-faith belief that defendants engaged in unlawful conduct is sufficient to support her claims." *Id.*

The Court finds that *Rollins* is applicable to the present case. Here, Plaintiff raised several complaints to his employer, not the federal government, regarding possible illegal behavior that could be in violation of federal law. He alleges that Reliant Care terminated his employment in response to these complaints, in violation of public policy. Whether defendants violated the FCA is not dispositive in this case. Therefore, the Court finds that Defendant Reliant Care has failed to demonstrate that a substantial federal question exists with respect to Plaintiff's wrongful discharge claim in Count II, and the Court will grant Plaintiff's motion to remand. *Id.* (remanding the case where none of the claims in plaintiff's well-pleaded complaint

required resolution of a substantial federal question such that defendants failed to meet their burden of establishing federal jurisdiction).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (ECF No. 14) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **REMAND** this case to the Twenty-First Judicial Circuit Court, St. Louis County, State of Missouri, from which it was removed. A separate Order of Remand accompanies this Memorandum and Order.

Dated this 4th day of December, 2018.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**